In the Matter of the Estate of ROSITA MAPLESON, Deceased.

Surrogate's Court, New York County, March 30, 1951.

*Saxe, Bacon & O'Shea* for Elton T. Cowan and another, as executors of Rosita Mapleson, deceased, petitioners.

*Edward F. L. Bruen* for Mercedes L. Gutierrez, respondent.

*Francis Dean,* special guardian for Ofil Rodriguez, an infant, respondent.

FRANKENTHALER, S. This is a proceeding to restrain the transfer of certain United States Government bonds, until it is determined whether their purchase for respondents by the testatrix was made in contemplation of death so as to require their inclusion in her gross taxable estate. The will of the testatrix makes no provision with respect to the source of payment of estate taxes and thus, if the bonds are includible in her taxable estate, the respondents will be required to pay a

prorata share thereof pursuant to section 124 of the Decedent Estate Law. The adult respondent has consented to the application by agreement with the executor which provides that on redemption by her of her bond a deposit in escrow will be made to insure payment of her share of the tax, if any. There remains for consideration the issue with respect to the infant respondent.

Testatrix died on June 19, 1950, at the age of eighty years. In 1944, six years prior to her death and at the age of seventy-four, she purchased for the infant, with respect to whom she had apparently stood *in loco parentis,* series " G " bonds having a total maturity value of $4,500. The petition alleges, and it is nowhere denied, that the infant, who is in fact twenty years of age, is financially irresponsible and it is for this reason that the executor seeks to invoke the exercise of the court's equity powers, there being, he contends, no other adequate remedy. To await a final determination as to the includibility of these bonds would permit the infant to dissipate the primary source and the only source in fact available for tax contribution. The special guardian for the infant contends that the court does not possess adequate jurisdiction to grant the injunctive relief sought.

The recent amendment made to section 124 of the Decedent Estate Law by chapter 822 of the Laws of 1950 which, it must be noted, merely purports, in the main, to codify existing case law, has no bearing upon the solution of this case, it being effective only with respect to the estates of persons dying on and after September 1, 1950. The court is of the opinion, however, that quite apart therefrom ample jurisdiction exists and existed under prior law to grant the relief prayed for, the court being empowered under section 40 of the Surrogate's Court Act " To administer justice in all matters relating to the affairs of decedents ", one of such matters being the apportionment of estate taxes.

In *Matter of Caplan* (196 Misc. 631), this court ruled upon a similar question of jurisdiction in a proceeding under section 19 of the Personal Property Law which authorizes suit by the representative of a deceased debtor for recovery of property transferred by the deceased in fraud of creditors. The executor in that case sought an interim order restraining the disposition of assets which, it was contended, had been fraudulently transferred to respondent until it could be determined whether they would be needed to satisfy claims. As here the ultimate question of taxability is problematical, there the question whether the estate would be insolvent was in issue. Whether the assets

would be required by the estate could not have been ascertained until the time for presentation of claims had expired. Here, it is whether the bonds were transferred to respondent in contemplation of death which cannot now be ascertained but which must await future determination in another forum. In the *Caplan* case (*supra*) interim disposition of the assets was prohibited, the device of injunction being employed to preserve the *status quo*. It was there said, at page 632: " The court \* \* \* has the power to restrain the dissipation or distribution of assets which properly belong to the estate or which should be applied, pursuant to some provision of law, to the use of those for whom the estate representative is acting (Surrogate's Ct. Act, §§ 20, 40; *Matter of Ashner,* 231 App. Div. 127).''

The present action is, in effect, one to protect the statutory lien of the Federal Government (U. S. Internal Revenue Code, § 827; U. S. Code, tit. 26), to which the executor, if the bonds are held includible in the gross estate, will be subrogated upon payment of the tax (Decedent Estate Law, § 124; see *Matter of Bull,* 175 Misc. 197). Until such determination, the lien remains inchoate, but the demonstrated possibility of its becoming mature in favor of the estate coupled with the undenied financial irresponsibility of the respondent makes this a case for the granting of equitable relief to insure the availability of the property, if it is necessary to apply it to the use of the estate.

It is true that under section 124 as it existed at the time of the death of the testatrix, a fiduciary could not *recover* an allocable share of the tax from the recipient of property not passing through the estate until the full tax had actually been paid by the fiduciary (*Matter of Bull, supra*). However, the court did possess the power to estimate and fix the share payable by each person and to make an appropriate *allocation,* reserving process for its recovery, however, until the tax was paid. In *Matter of Bull* (*supra*) the court said, at page 201: " There is nothing in the section which prohibits the bringing on of a proceeding to determine the legal liability for the tax even before it is paid. \* \* \* Even if there were no clause in the will [which was sought to be construed] dealing specifically with the payment of taxes the court still would be empowered to determine the respective obligations of the parties receiving property out of the tax estate of deceased. Nothing in the section forbids the *fixation* of that liability as a basis to immediate right of recovery of the proportions due from the respective recipients *when and if* any funds for their account are paid

out of the true estate by the fiduciary. The sole limitation in the section is that the fiduciary may not collect the tax contribution in advance. The taxing authorities may proceed directly against each recipient of course but the fiduciary may not until he has paid funds of the true estate for the account of persons receiving property constituting part of the tax estate though not part of the true estate of deceased.'' (Emphasis added.)

It does not appear, however, that the granting of the instant application is in any way interdicted by the rule laid down in the statute prior to its amendment and in the *Bull* case (*supra*), that contribution cannot be compelled prior to payment of the tax by the fiduciary. The proceeding now before the court does not seek *collection* of a portion of the tax but merely the tentative *allocation* to respondent of a share thereof and, more important, the preservation for the time being of respondent's ownership of the primary source of its payment. The respondent will not be directed to make present contribution. However, the threat that he will not be capable of doing so later, coupled with the reasonable possibility that the taxing authorities may include in the taxable estate the property he received, is sufficient to require the issuance of an injunction restraining the transfer or redemption of the bond in question. He may, in the alternative, however, deposit the sum of $1,250 into court or with the executor or otherwise insure future payment of his share of the tax, if any.

The amount of the undertaking which petitioner will file to indemnify respondent will be fixed upon the settlement of the order to be entered hereon.

Submit, on notice, order accordingly.